# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Precise Location Information and Data/GPS<br>Information on a Cellular Telephone<br>Assigned Call Number (970) 539-7403 | )<br>)<br>) Case No.  19-sw-06256-STV<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I am a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A attached hereto and hereby incorporated by reference.

located in the _____ District of _____Colorado_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B attached hereto and hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(1) | Unlawful Possession of a Firearm by a Previously Convicted Felon |

The application is based on these facts:

See Affidavit attached hereto and hereby incorporated by reference.

☑ Continued on the attached affidavit, which is incorporated by reference.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/ Luke Hitt*
*Applicant's signature*

Special Agent Luke Hitt, ATF
*Printed name and title*

Sworn to before me and: ☐ signed in my presence.

☑ submitted, attested to, and acknowledged by reliable electronic means.

Date: December 6, 2019

*Judge's signature*

City and state: Denver, CO

Scott T. Varholak, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(970) 539-7403**, **(**the "Target Cell Phone"), whose wireless service provider is **Sprint**, a company headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of Sprint.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

1. To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **November 23, 2019 through December 5, 2019.**

   b. The following information about the customers or subscribers of the Account:

      i. Names (including subscriber names, user names, and screen names);
      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
      iii. Local and long distance telephone connection records;
      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
      v. Length of service (including start date) and types of service utilized;
      vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

   c. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. historical location information, including data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Account for the time period **November 23, 2019 through December 5, 2019.**

    d. The Provider shall deliver the information set forth above within 7 days of the service of this warrant and the PROVIDER shall send the information via facsimile or United States mail, and where maintained in electronic form, on CD-ROM or an equivalent electronic medium, to:

        Special Agent Luke Hitt (ATF)
        950-17th Street, Suite 1800 Denver CO

2. The Provider shall provide all prospective location information about the location of the Target Cell Phone described in Attachment A for a period of **thirty** days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A**.** To the extent that the location information is within the possession, custody, or control of Provider, Provider is required to disclose the Location Information to the government. In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

3. *Prospective Pen-Trap Information.* Pursuant to 18 U.S.C. § 3123, the **ATF** may install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cell phone identified in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit:

   - IP addresses associated with the cell phone device or devices used to send or receive electronic communications
   - Identity of accounts that are linked by creation IP address, recovery email, telephone number, or other identifiers
   - Identity of all accounts that are linked to the account by cookies
   - Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number **(970) 539-7403**, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN

- IP addresses of any websites or other servers to which the cell phone device or devices connected
- Source and destination telephone numbers and email addresses
- "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c)

Pursuant to 18 U.S.C. § 3123(c)(1), the use and installation of the foregoing is authorized for **thirty days** from the date of this Order. Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

4. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 18 U.S.C. Section 922(g)(1), or that will help locate and arrest a fugitive, involving Joel FLORES, during the period November 23, 2019 through the conclusion of the period authorized by this warrant.

Pursuant to 18 U.S.C. § 2703(g), the presence of an agent is not required for service or execution of this warrant.

Pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2705(b)(1), the Court orders **Sprint** not to disclose the existence of this warrant to the subscriber for a period of ONE YEAR from the date of this warrant's issuance.

## AFFIDAVIT

I, ATF Special Agent Luke Hitt, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (970) 539-7403, (the "Target Cell Phone"), whose service provider is Sprint, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Sprint to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the ATF, and have been since 2009. I have received training regarding violations of federal firearms laws, as well as training in the area of fugitive location and apprehension. I know through my training and experience that many fugitives use cellular telephones to communicate, and can often be located by their cellphone location.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that the information sought by this warrant will assist law enforcement in arresting **Joel FLORES**, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7. The United States, including ATF, is attempting to locate and arrest Joel FLORES DOB 5/5/1989, for violating 18 U.S.C. § 922(g)(1). Contemporaneous with this application, on December 6, 2019, a federal arrest warrant has been sought for FLORES for a violation of 18 U.S.C. § 922(g)(1), unlawful possession of a firearm by a previously convicted felon.

8. In November 2019, ATF received information regarding Joel FLORES (DOB: 5/5/89), and opened an investigation. During this investigation, your affiant reviewed a computerized criminal history record for FLORES and determined that FLORES has multiple prior felony convictions, including the felony offense of vehicular eluding. That conviction occurred on or about July 21, 2010, in Weld County, Colorado, case number 2009CR719.

9. During late November and early December 2019, FLORES posted multiple videos to his Facebook account. Your affiant viewed a video posted to FLORES' Facebook account on November 23, 2019. In this video, FLORES is seen smoking what your affiant's training and experience leads him to believe is methamphetamine. FLORES is then shown holding a silver revolver. He places the revolver on a bed, and then places it into his waistband.

10. Greeley Police Department Sergeant Michael Pfeiler viewed the aforementioned video posted to FLORES' Facebook account on November 23, 2019. Sergeant Pfeiler was inside the subject premises on November 8, 2019 in relation to a call for medical assistance. Sergeant Pfeiler told your affiant that the Facebook video posted on November 23, 2019, in which FLORES is seen smoking what appears to be methamphetamine and brandishing a silver revolver, shows the same bedroom and location that he was in on November 8, 2019 during the call for medical assistance at FLORES' residence, the subject premises.

11. Your affiant spoke with Weld County Drug Task Force Investigator John Maedel. Investigator Maedel told your affiant that on November 26, 2019, he saw a video on FLORES' Facebook page. Investigator Maedel said the video appears to have been filmed in the same location as the November 23, 2019 video—the subject premises. Investigator Maedel told your affiant that, in the video, FLORES is seen holding a silver revolver. FLORES then lists off the names of three Greeley Police Officers, and says, "if you come here I'll make you famous."

While saying this, FLORES was pointing the firearm at the camera. Investigator Maedel told your affiant that he believes these actions and statements were a threat against those officers. That video was removed from Facebook later that same day.

12. On or about December 2, 2019, your affiant received information from Greeley Police Department (GPD) Detective Josh Dice. Detective Dice told your affiant that he received information from a confidential source (CS) regarding FLORES. The CS told Detective Dice that he/she speaks with FLORES on the aforementioned phone number "every day." Detective Dice told your affiant that the CS has a long history of provided accurate and verifiable information.

13. On December 3, 2019, your affiant received further information from the Greeley Police Department (GPD). GPD told your affiant that a different CS informed the department that the source was inside the subject premises with FLORES within the last few weeks. This CS said that FLORES has a silver revolver with him inside the subject premises, and that the source has seen the revolver inside the subject premises on multiple occasions over the last few weeks. The CS said that, within the past few weeks, FLORES discharged the revolver inside the residence during a dispute with another individual.

14. On December 5, 2019, a recorded phone call was placed to the target cell phone. A brief conversation was recorded. On that same date, GPD Deputy Chief Adam Turk listened to the recording. Deputy Chief Turk spoke with FLORES via telephone approximately 1 week prior as part of an unrelated investigation. After listening to the recording, Deputy Chief Turk told your affiant that he believes the person who answered the target cell phone on the recording is FLORES.

15.     Determining the location of the Target Cell Phone prospectively will likely aid in the location and apprehension of FLORES.  Similarly, historical location information will likely shed light on the actions of FLORES in the period since November 23, 2019, including evidence of his suspected unlawful possession of firearms in that period, as described above.

16.     In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

17.     Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available.

18.     Based on my training and experience, I know that Sprint can collect historical and prospective cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Sprint typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of a fugitive, of co-conspirators, and/or victims.

## AUTHORIZATION REQUEST

19.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

20.     I further request that the Court direct Sprint to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Sprint, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

21. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **30 days** after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

22. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint.  I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

23. I further request that this Court order Sprint not to notify the subscriber of the existence of the warrant; the requested warrant relates to flight from prosecution and destruction of evidence. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

24. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Respectfully submitted,

s/ *Luke Hitt*
Luke Hitt
Special Agent
ATF

Subscribed and sworn to before me this __6th__ day of December, 2019.

_____
THE HON. SCOTT T. VARHOLAK
UNITED STATES MAGISTRATE JUDGE

**Reviewed and Submitted by Rajiv Mohan, Assistant United States Attorney.**

**To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant will also function as a pen register order. I, Rajiv Mohan, thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation conducted by the above agency. See 18 U.S.C. §§ 3122(b), 3123(b).**

8